IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

STEVEN STANFIELD,                           CV-10-658-MA

         Plaintiff,                         OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

         Defendant.

TIM WILBORN
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045
(503) 632-1120

         Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

LEISA A. WOLF
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-7075
(206) 615-3621

      Attorneys for Defendant

MARSH, Judge.

      Plaintiff seeks judicial review of the Commissioner's April 15, 2010, final decision denying his May 4, 2006, applications for Disability Insurance benefits (DI) under 42 U.S.C. §§ 401-34 and Supplemental Security Income benefits (SSI) under 42 U.S.C. §§ 1381-83f.[1]  He seeks an order from the court remanding this matter either for the immediate payment of DIB and SSI or for reconsideration of the evidence by the Commissioner.

      I **REVERSE** the final decision of the Commissioner and **REMAND** this matter for further proceedings as set forth below.

<u>BACKGROUND</u>

      Plaintiff alleges he has been disabled since January 1, 2005, because of a combination of impairments that include diabetes, deep venous thrombosis, swelling, pain, a slow healing ulcer of his left leg, amputated fingers of his left hand, and degenerative disc disease of the cervical spine.

_____

[1] Plaintiff previously filed applications for DIB and SSI benefits on February 25, 2005.  The applications were denied initially and plaintiff did not seek reconsideration.  Therefore, those decisions are final.  20 C.F.R. § 404.905 and § 416.1405.

2  - OPINION AND ORDER

On April 14, 2008, an administrative law judge (ALJ) held a hearing at which plaintiff, his wife, and a vocational expert testified.

On July 22, 2008, the ALJ issued a written decision that plaintiff is not capable of performing his past relevant work, but he is capable of performing a full range of unskilled sedentary work, including jobs such as nut sorter, beverage order clerk, and survey system monitor, as well as unskilled light work as an information clerk.

On April 15, 2010, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, is the final decision of the Commissioner for purposes of judicial review.

### THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a plaintiff is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1520 and 416.920.  Plaintiff has the burden of proof at Steps One through Four.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff engaged in substantial gainful activity that disqualified him from receiving benefits until January 1, 2005.  This finding is not challenged.

At Step Two, the ALJ found plaintiff has severe impairments

including diabetes mellitus, left-sided deep vein thrombosis, obesity, and the loss of three and one-half fingers on his non-dominant left hand by amputation. <u>See</u> 20 C.F.R. §§404.1520© and 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's severe impairments do not meet or equal a listed impairment but they do limit him to work that requires the following:  Lifting and carrying no more than 25 lbs frequently and 50 lbs occasionally; sitting, walking, and/or standing for no more than six hours in an 8-hour workday with the opportunity to change position every 30 minutes.  The ALJ also found Plaintiff should not work in an environment with a heightened risk of major injury, or in any jobs that require him to use his left hand for keyboarding or to climb ropes and ladders.  He may work in jobs that require occasional climbing of stairs, kneeling, crouching, crawling, handling, gripping, and grasping with his left hand.

At Step Four, the ALJ found plaintiff is unable to perform his past relevant work as a restaurant employee and janitor.

At Step Five, the ALJ found plaintiff is able to perform unskilled, sedentary jobs including beverage order clerk, nut sorter, and light, unskilled work as an information clerk.

Based on these findings, the ALJ found plaintiff is not

4 - OPINION AND ORDER

disabled and, accordingly, is not entitled to any benefits.

**LEGAL STANDARDS**

The initial burden of proof rests on the plaintiff to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the plaintiff must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's final decision must be affirmed if it is based on proper legal standards and substantial evidence in the record supports the ALJ's findings. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all the evidence that supports or detracts from the Commissioner's final decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The court must uphold the decision even if the evidence "is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record.

DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty
to further develop the record is triggered if the evidence is
ambiguous or if the record is inadequate to allow for proper
evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453,
459-60 (9th Cir. 2001).

     The decision either to remand for further proceedings
or for immediate payment of benefits is within the discretion
of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.),
cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings
can remedy defects in the original administrative proceeding, a
social security case should be remanded."  Lewin v. Schweiker,
654 F.2d 631, 635 (9th Cir. 1981).

### ISSUES ON REVIEW

     The issues are whether the ALJ erred by (1) failing to
credit plaintiff's evidence regarding the severity of his
impairments; (2) failing to give germane reasons for discounting
the lay testimony of plaintiff's wife; (3) failing to give clear
and convincing reasons for not crediting the medical opinion of
treating and examining physicians, and (4) failing to provide an
appropriate hypothetical question to the vocational expert.

### EVIDENCE

     The evidence is drawn from testimony at the April 14, 2008,
hearing, plaintiff's application for benefits, his work history
and daily activity reports, and the medical records included in

the Administrative Record.

**Plaintiff's Evidence**.

On the date of the hearing, plaintiff was 41 years old.
He has a 9th grade education and earned a GED.

Employment History.

From 1990 to 2004, plaintiff worked in various restaurants
performing tasks such as carrying trays of dishes and boxes of
food, and hauling out garbage cans.  He frequently lifted and
carried 10 lbs and sometimes up to 50 lbs.

In 2005, plaintiff worked 20 hours per week for six months
waxing floors.  He last worked one week in 2006 cleaning carpets.
He also performed temporary work (two shifts only) at a fish
plant emptying crab shells.

Physical Impairments/Limitations.

Plaintiff is right-handed.  At age 9, he lost three and one-
half fingers on his non-dominant left hand when a dynamite cap he
picked up exploded.  He has full use of his pinky finger and
partial use of his thumb with weakness and soreness in that hand.

In 2005, plaintiff was treated in a hospital emergency room
for cramping, shooting, stinging pains and swelling throughout
his left leg.  Blood clots were found from his groin to his
ankle.  His level of pain was 10 on a scale of 1-10.  He was in
the hospital for a week.  During that time, he was also diagnosed
with diabetes.  He was prescribed Coumadin to treat blood clots

and Metformin to treat diabetes.

Plaintiff now is able to walk no more than two and one-half blocks and stand on his left leg for up to 10-15 minutes at a time.  After that, his leg begins to swell, sting, and cramp. When that occurs, he has to keep his leg elevated for anywhere from 15 minutes to one or two hours.

When he sits down for more than 15-20 minutes, plaintiff's leg begins to swell.  He is able to sit for longer periods if his leg is elevated above his belt line.

Two or three times a month, plaintiff's leg is so sore and swollen that he has to lay down all day.  Usually, he is able to do chores such as vacuuming and washing the dishes for 15 minutes before he needs to lay down.  He plays tournament pool, however, unless his leg is too sore and swollen, which occurs up to 10 days each month.  In any match, his turn at the table lasts for a total of ten to fifteen minutes.

**Lay Witness Evidence.**

Plaintiff's wife, Kathleen Stanfield, testified that since his hospitalization in 2005, plaintiff has been in constant pain caused by swelling, cramps, and stinging in his left leg.  He has an intermittent left leg sore depending on his activity level. He is able to stand and/or walk for up to 15 minutes before his leg swells.  He then sits down for an hour or so.  He stays off his feet all day if the swelling is severe.  He is able to sit at

his computer for 15-20 minutes before his leg swells.

**Vocational Expert Evidence.**

Vocational Expert (VE) Nancy Bloom testified plaintiff would not be able to perform his past work if he were restricted as follows: Lifting up to 25 lbs frequently and 50 lbs occasionally; sitting, standing, and walking up to six hours each day as long as he was able to change position after sitting for 30 minutes; avoiding walking and/or standing for more than 30 minutes and remaining seated for at least 30 minutes before getting on his feet again; avoiding ropes, ladders, scaffolding, or other high risk jobs; climbing, kneeling, and crouching occasionally; handling, grasping, and gripping with the left hand occasionally with no fingering.

The VE testified that even with these restrictions, plaintiff would be able to work as a nut sorter, food and beverage order clerk, information clerk, and surveillance system monitor.  The VE, however, also testified that if plaintiff needed to take 15 minute breaks each hour, he would be unable to perform those jobs.

**Medical Evidence - Treatment.**

In January 2005, physicians James P. Wood, M.D., and Bang T. Nguyen, M.D. treated plaintiff for severe left calf pain and swelling and both diagnosed plaintiff as having a "large, deep, venous thrombosis" in his left leg as reflected in a venous

9 - OPINION AND ORDER

ultrasound that showed the thrombosis ran from plaintiff's groin
to his left ankle.  Plaintiff was advised to elevate his left leg
and wear a compression stocking.

Later the same month, plaintiff was treated in the emergency
room for progressive swelling in his left leg.  On examination,
he was again found to have an extensive deep vein thrombosis
from an unknown cause extending from his groin to his left ankle.
He was also diagnosed with Type II Diabetes.  He was prescribed
Coumadin to treat the thrombosis.  He was later advised he would
need to continue taking Coumadin for the rest of his life.

In April 2006, plaintiff was treated at the emergency room
because his leg was more swollen than usual.  William Aurich,
D.O., recommended that plaintiff wear compression stockings.

In August 2006, plaintiff was noted to be "lax" in modifying
his diet in light of his diabetes

In May 2007, Dr. Aurich opined to plaintiff's attorney that
plaintiff suffered from "chronic medical conditions that will
impede his employability to a considerable degree," including
chronic idiopatic thromboembolic disease that increased his risk
of death or disability.  Dr. Aurich opined that plaintiff's
condition might worsen if he had to stand for more than 15
minutes at a time or in any "sedentary position."  His diabetes
and hyperlidemia "put him at risk for the gamut of circulatory
diseases."  Plaintiff should avoid prolonged sitting or sedentary

10 – OPINION AND ORDER

activities, and prolonged standing would exacerbate the swelling
in his leg even if he was in a job that allowed him to walk
around.  Dr. Aurich opined that any such exacerbation would make
plaintiff "virtually unemployable" because his disease would
progress more rapidly, causing him to miss work frequently.

In July 2007, Dr. Nguyen reviewed Dr. Aurich's chart notes
and opined to plaintiff's attorney that plaintiff "was limited in
the type of work that he can perform" because of his "deep venous
thrombosis," but he was able to work if the job did "not require
prolonged periods of standing or walking."

**Medical Evidence - Examination.**

In December 2007, Roger Willis, M.D. briefly treated
plaintiff for an ulcer on his left leg.  Plaintiff asked at the
time for a complete physical and a review of his medical records
to "establis[h] the need for disability."  After he examined
plaintiff, Dr. Willis diagnosed thromboembolic disease of the
left lower extremity with postphlebitic syndrome and chronic
pain, varicose veins, obesity, and Type 2 Diabetes.  He opined
that plaintiff had "significant factors preventing him from
obtaining gainful employment" but "there has not been a lot of
effort" by plaintiff to lose weight.

Later that month Dr. Willis examined plaintiff to evaluate
his ability to work.  Dr. Willis opined plaintiff "will have, on
average, multiple days each month when his symptoms become severe

11 - OPINION AND ORDER

and result in missed work" as a result of leg swelling and
incapacitating leg pain.  Dr. Willis also noted that he had
previously recommended that plaintiff wear "a medical grade
compressive stocking [to] alleviate the swelling with the leg in
either the standing or the dependent position," but plaintiff had
told him another doctor had told him that such a stocking was
"contraindicated."  Dr. Willis opined "elevation [w]as the only
means to control the leg swelling and complicating pain," which
would "complicate[]" but "not exclude entirely, sedentary work."

Nevertheless, Dr. Willis opined plaintiff had "significant
factors preventing him from obtaining gainful employment."

**Medical Evidence - Consultation**.

In July 2006, Richard Alley, M.D., reviewed plaintiff's
medical records on behalf of the Commissioner.  He opined that
plaintiff has the residual function capacity to occasionally lift
20 lbs and frequently lift 10 lbs, stand and/or walk with normal
breaks for 6 hours in an 8-hour work day, sit with normal breaks
for about 6 hours in an 8-hour work day, and push/pull on an
unlimited basis.  Because of his deep venous thrombosis,
plaintiff should never be required to climb ladders, ropes, or
scaffolds, but he may occasionally climb ramps and stairs,
balance, stoop, kneel, crouch, and crawl.  He has unlimited
ability to reach in all directions and feel, but he is limited to
occasional handling and fingering because of the loss of four

fingers.  He has no other limitations.

In October 2006, Mary Ann Westfall, M.D., also reviewed plaintiff's medical records on behalf of the Commissioner. She opined that plaintiff could occasionally lift 50 lbs and frequently lift 25 lbs, stoop and kneel frequently, but otherwise found the same limitations as Dr. Alley.

## ANALYSIS

### 1.  Failure to Credit Plaintiff's Testimony.

The ALJ found plaintiff's "inconsistent statements and actions [] undermine [his] credibility" as to the extent of his physical impairments.  I disagree.

A plaintiff who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  <u>See also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The plaintiff need not produce objective medical evidence of the symptoms or their severity. <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the plaintiff produces objective evidence that underlying impairments could cause the pain complained of and there is not any affirmative evidence to suggest the plaintiff is malingering, the ALJ is required to give clear and convincing reasons for

13 - OPINION AND ORDER

rejecting plaintiff's testimony regarding the severity of his symptoms. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). <u>See also</u> <u>Smolen</u>, 80 F.3d at 1283.  To determine whether the plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities. <u>Id</u>. at 1284 (citations omitted).

Here, there is no evidence plaintiff is a malingerer.  He produced substantial objective medical evidence to support his need to have his left leg elevated for sustained periods of time during the work day, the severity of his pain in his left leg, and the limitations resulting from the loss of three fingers on his non-dominant left hand.

The ALJ, however, found plaintiff was not credible because his daily activities included caring for his personal needs, driving, preparing his own meals, washing dishes, shopping in stores, handling finances, caring for his cat, playing pool, and using a computer.

The Court concludes that, in light of plaintiff's clearly established diagnoses and physical limitations that are well-

established in the medical records, his daily activities are not inconsistent with the specific physical limitations that allegedly cause him to be disabled.

Moreover, the medical record as a whole does not contradict plaintiff's assertion that he is not able to sustain the activities described by the ALJ for an extended period of time before he needs to elevate his leg.

### 2. <u>Failure to Credit Lay Witness Evidence</u>.

Plaintiff contends the ALJ did not give germane reasons to discredit evidence from plaintiff's wife that plaintiff is unable to stand, walk, or sit for more that 20 minutes before elevating his left leg in order to relieve the pain in that leg.   I agree.

Lay witness evidence as to a plaintiff's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ rejected the evidence from plaintiff's wife, reasoning that her observations merely reflected how plaintiff acted around her and his "chosen presentation" to her was not reliable because plaintiff was not credible.

In light of the Court's conclusion that the ALJ erred in his assessment of plaintiff's credibility, the court concludes the ALJ also erred in his assessment of the lay evidence presented by

plaintiff's wife.

3.   **Failure to Credit Treating Physicians' Opinions**.

Plaintiff contends the ALJ erred in not giving appropriate weight to medical reports of Dr. Aurich and Dr. Willis, both of whom opined that any long-term standing by plaintiff would increase the swelling in his left leg and plaintiff needed to elevate his leg frequently, as often as every 15 minutes, to relieve the pain and swelling.  I agree.

An ALJ may reject the uncontroverted opinion of a treating physician only by stating clear and convincing reasons that are supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).  An ALJ also may disregard the controverted opinion of an examining physician only by setting forth specific and legitimate reasons that are supported by substantial evidence in the record.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The weight given to opinions from other sources such as nurse practitioners depends on the facts of each case.  Soc. Sec. Ruling 06-3p.

Here, the ALJ rejected the medical opinions of Dr. Aurich and Dr. Willis and, instead, relied on Dr. Nguyen's opinion that plaintiff would be able to work if the job did "not require prolonged periods of standing or walking."  In reaching that conclusion, the ALJ relied on Dr. Nguyen's purported long-term

16 - OPINION AND ORDER

care of plaintiff over a three-year period, and the fact that
Dr. Nguyen "never once instructed the claimant to elevate his
left leg, even when initially diagnosed, throughout more than
three years of treatment."

The record, however, also reflects Dr. Willis either
examined plaintiff or treated him during a time-frame from
January 2005 to August 2007, similar to the time-frame during
which Dr. Nguyen treated plaintiff.  Moreover, Dr. Aurich's
treatment records from April 2006 to May 2007, tend to support
Dr. Willis's opinion regarding the severity of plaintiff's
impairments.  In addition, plaintiff's testimony regarding the
severity of his impairments, which the ALJ improperly rejected,
and which, therefore, is credited as true, provides added weight
to the opinions offered by Dr. Aurich and Dr. Willis, rather than
the opinion of Dr. Nguyen.

On this record, therefore, I conclude the ALJ did not give
specific and legitimate reasons for crediting Dr. Nguyen's
opinion regarding the impact of plaintiff's impairments on his
ability to work over the contrary opinions of  Dr. Aurich and Dr.
Willis.

Nevertheless, the evidence is at least ambiguous as to
whether plaintiff is capable of some form of sedentary work
despite his left leg impairment.  Dr. Willis offered seemingly
contradictory opinions that plaintiff's impairments do not

17 - OPINION AND ORDER

"exclude entirely, sedentary work," while also opining that plaintiff had "significant factors preventing him from obtaining gainful employment."  Dr. Aurich's treatment records are not any more specific, stating that further exacerbation of plaintiff's left leg impairment caused by prolonged standing would render plaintiff "virtually unemployable."

## REMAND

Based on the above, the court concludes this matter must be remanded to the Commissioner.  Whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

I conclude clarification is necessary from Dr. Aurich and Dr. Willis as to whether plaintiff is unable to engage in any substantial gainful activity, sedentary or otherwise, because of his combined limitations resulting from the injury to his left hand and the pain caused by the deep vein thrombosis in his left leg.  The Commissioner should also obtain further evidence from a vocational expert as to whether any such limitations, as clarified, could be reasonably accommodated to permit plaintiff to return to work involving substantial gainful activity.

18 - OPINION AND ORDER

## CONCLUSION

For these reasons, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings as set forth above.

IT IS SO ORDERED.

DATED this 7  day of June, 2011.

                               /s/ Malcolm F. Marsh
                              MALCOLM F. MARSH
                              United States District Judge

19 - OPINION AND ORDER